IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MW CAPITAL FUNDING, INC. a )
Delaware corporation, )
 )
    Plaintiff )
 ) Case No.:
v. )
 ) Honorable
MAGNUM HEALTH AND REHAB OF )
MONROE LLC, a Delaware limited )
liability company, MAGNUM HEALTH )
AND REHAB OF SAGINAW LLC, a )
Delaware limited liability company, )
MAGNUM HEALTH AND REHAB OF )
ADRIAN LLC, a Delaware limited )
liability company, and MAGNUM )
HEALTH AND REHAB OF )
HASTINGS LLC, a Delaware limited )
liability company, )
 )
    Defendants. )
_____/

## COMPLAINT

NOW COMES MW Capital Funding, Inc. ("Plaintiff") by and through its attorneys Pepper Hamilton LLP, and for its complaint against Magnum Health And Rehab Of Monroe LLC ("Monroe"), Magnum Health And Rehab Of Saginaw LLC, ("Saginaw"), Magnum Health And Rehab Of Adrian LLC ("Adrian"), and Magnum Health And Rehab Of Hastings LLC, ("Hastings," along with Monroe, Adrian, and Saginaw collectively, the "Defendants"), states as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a Delaware corporation with its principal place of business in Michigan.

2. Monroe is a Delaware limited liability company, whose sole member is Beyond Healthcare LLC ("Beyond Healthcare").

3. Saginaw is a Delaware limited liability company, whose sole member is Beyond Healthcare LLC.

4. Adrian is a Delaware limited liability company, whose sole member is Beyond Healthcare.

5. Hastings is a Delaware limited liability company, whose sole member is Beyond Healthcare.

6. Beyond Healthcare's sole member is Jack Heiney, who resides at 1051 NE 180th Terrace, North Miami Beach, Florida 33162.

7. The Court has personal jurisdiction because the Defendants conduct business in the State of Michigan.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because: (i) a substantial portion of the events and omissions giving rise to the claims arose in this district, and (ii) a substantial portion of the property which is the basis for this action is situated in this district.

## BACKGROUND

## LOAN

9. On or about September 28, 2012, Defendants, together with Magnum Health And Rehab of Albion LLC ("Albion") and Latrobe Health LLC ("Latrobe") (collectively, the "Borrowers") borrowed from Plaintiff the amount of $2,109,627.85 (the "Loan") for the benefit of the Borrowers.

10. Borrowers simultaneously executed a secured promissory note (the "Note") in favor of Plaintiff in the amount of $2,109,627.85. A true and complete copy of the Note is attached hereto and incorporated herein as Exhibit A.

11. To secure the obligations under the Note, Borrowers executed a Security Agreement (the "Security Agreement," together with the Note, the "Loan Documents") which grants to Plaintiff a security interest in certain defined collateral, including, but not limited to: (a) all Accounts[1], (b) all Chattel Paper, including electronic chattel paper, (c) all Commercial Tort Claims, (d) all Documents, (e) all General Intangibles, including Payment Intangibles, Software and Intellectual Property, (f) all Inventory, Equipment, Fixtures and other Goods, (g) all Instruments, (h) all books and records (including customer lists, files,

---

[1] All capitalized terms used but not otherwise defined in the Security Agreement shall have the meanings defined in the Note (to the extent applicable) and otherwise as defined under the Uniform Commercial Code.

#39193131 v6

correspondence, tapes, computer programs, print-outs, and computer records) pertaining to the foregoing; and (i) without limiting the generality of the foregoing, any and all of such Borrowers' rights (but none of the obligations), title and interest (including security interests) under the Governmental Authorizations and Material Contracts[2] (collectively, the "Collateral"). A true and complete copy of the Security Agreement is attached hereto and incorporated herein as Exhibit B.

12. The UCC-1s for the Defendants were properly filed with the Secretary of State for the State of Delaware on September 28, 2012. A true and complete copy of the filed UCC-1s are attached hereto and incorporated herein as Exhibit C-1, Exhibit C-2, Exhibit C-3 and Exhibit C-4.

13. The Plaintiff holds a properly perfected security interest in all of the personal property interests of the Defendants.

14. Subsequent to the execution of the Note and Security Agreement and prior to January 1, 2015, Albion was closed and it is no longer in business. Furthermore, the lease pursuant to which Latrobe had the right to operate a skilled nursing facility was terminated and Latrobe is no longer in business.

---

[2] Governmental Authorizations and Material Contracts include the Defendants' licenses and certificates of need.

## DEFAULT UNDER THE LOAN DOCUMENTS

15. Pursuant to the Note, interest only payments[3] were to be paid monthly in arrears on the first day of each month commencing November 1, 2012 (the "Monthly Payments").

16. The Maturity Date of the Note was September 28, 2013.

17. On or about March 15, 2015, the Plaintiff and the Borrowers entered into a First Amendment and Forbearance Agreement (the "Forbearance Agreement"), which, among other things extended the Maturity Date of the Note until December 31, 2015, and detailed the monthly payments to be made by the Borrowers to the Plaintiff under the Note. A copy of the Forbearance Agreement is attached hereto and incorporated herein as Exhibit D.

18. The Note matured, at the latest, on December 31, 2015.

19. On or about May 18, 2016, Plaintiff sent to the Borrowers a Notice of Default demanding the outstanding amount due and owing under the Note. A copy of the Notice of Default is attached hereto and incorporated herein as Exhibit E.

20. As of November 30, 2016, Defendants owe the Plaintiff the aggregate amount of $3,219,558.67, which includes, among other things, principal,

---

[3] Paragraph 1 of the Note provides that the Interest Rate to be paid on the Note is twelve (12) per cent per annum.

interest, default interest, late fees, plus continuing per diem interest in the amount of $1,166.91, and fees and expenses incurred by the Plaintiff, in enforcing the Loan Documents and all other amounts due and owing by Defendants under the Loan Documents.

## OTHER SECURED LIENS

21. On or about September 28, 2012, MI Saginaw Holdings LLC, MI Adrian Holdings LLC, MI Albion Holdings LLC, MI Hastings Holdings LLC, MI Monroe Holdings LLC and 576 Latrobe LLC ("Real Estate Borrowers") borrowed from Capital One, National Association ("Capital One") the amount of $13,000,000.00 (the "Capital One Loan").

22. Real Estate Borrowers simultaneously executed a secured promissory note (the "Capital One Note") in the amount of $13,000,000.00.

23. To secure the obligations under the Capital One Note, the Real Estate Borrowers executed a Term Loan Agreement (the "Capital One Loan Agreement") wherein, among other things, they each granted to Capital One a security interest in all of their respective assets, rights and interests in property, whether real or personal, tangible or intangible.

24. To further secure the obligations under the Capital One Note, and as a condition to the Loan, the Borrowers executed a Security Agreement in favor of Capital One (the "Capital One Security Agreement" together with the

Capital One Note and the Capital One Loan Agreement, the "Capital One Loan Documents") which grants to Capital One a security interest in certain defined collateral, including, but not limited to: (a) all Accounts[4], (b) all Chattel Paper, including electronic chattel paper, (c) all Commercial Tort Claims, (d) all Documents, (e) all General Intangibles, including Payment Intangibles, Software and Intellectual Property, (f) all Inventory, Equipment, Fixtures and Other Goods, (g) all Instruments, (h) all books and records (including customer lists, files, correspondence, tapes, computer programs, print-outs, and computer records) pertaining to the foregoing; and (i) without limiting the generality of the foregoing, any and all of such Borrowers' rights (but none of the obligations), title and interest (including security interests) under the Governmental Authorizations and Material Contracts[5] (collectively, the "Collateral"). A true and complete copy of the Security Agreement is attached hereto and incorporated herein as Exhibit F.

25. The UCC-1s of the Defendants were properly filed with the Secretary of State for the State of Delaware on or about September 28, 2012 (the "Capital One UCCs"). *See* Exhibits H-1 through H-4.

---

[4] All capitalized terms used but not otherwise defined in the Security Agreement shall have the meanings defined in the Note (to the extent applicable) and otherwise as defined under the Uniform Commercial Code.

[5] Governmental Authorizations and Material Contracts include the Defendants' licenses and certificates of need.

#39193131 v6

26. On or about March 5, 2015, Capital One and Michigan Finance LLC ("Michigan Finance") executed a Loan Purchase Agreement (the "Loan Purchase Agreement"), whereby Capital One sold to Michigan Finance the Capital One Loan. A copy of the Loan Purchase Agreement is attached hereto and incorporated herein as Exhibit G.

27. Assignments of the Capital One UCCs were filed on or about May 13, 2016. Copies of the Assignments are attached hereto and incorporated herein as Exhibit H-1, Exhibit H-2, Exhibit H-3 and Exhibit H-4.

28. At the time of the Loan Purchase Agreement, one of the Real Estate Borrowers paid $5,600,000.00 on the Capital One Note, leaving a balance owed under the Capital One Note of approximately $6.6 Million.

29. Michigan Finance is aware of the filing of this Complaint and will be sent a copy of the Complaint and all related pleadings via email and first class mail.

30. Michigan Finance agrees that Plaintiff has a first priority lien on personal property of the Defendants.

## DEFAULT UNDER REAL PROPERTY LEASES

31. On or about August 4, 2010, Monroe entered into a Lease Agreement with MI Property Holdings LLC ("Monroe Landlord") for the real property and all habitable buildings having a street address of 1215 North

Telegraph, Monroe, Michigan (the "Monroe Facility"), along with all of the equipment, fixtures, furnishings and improvements located thereon (the "Monroe Lease") in order to operate an existing skilled nursing facility.

32. Monroe last paid rent to Monroe Landlord in November of 2012.

33. The base monthly rental payment owed under the Monroe Lease is the amount of $56,515.00.

34. The aggregate amount owed by Monroe to the Monroe Landlord under the terms of the Monroe Lease as of November 30, 2016 is $2,820,091.00 (the "Monroe Arrearage").

35. On or about May 6, 2011, Saginaw entered into a Lease Agreement with MI Saginaw Holdings LLC ("Saginaw Landlord") for the real property and all habitable buildings having a street address of 2160 North Center Road, Saginaw, Michigan (the "Saginaw Facility"), along with all of the equipment, fixtures, furnishings and improvements located thereon (the "Saginaw Lease") in order to operate an existing skilled nursing facility.

36. Saginaw last paid rent to Saginaw Landlord in December of 2011.

37. The base monthly rental payment owed under the Saginaw Lease is the amount of $47,142.00.

#39193131 v6

38. The aggregate amount owed by Saginaw to the Saginaw Landlord under the terms of the Saginaw Lease as of November 30, 2016 is $3,165,064.00 (the "Saginaw Arrearage").

39. On or about August 4, 2010, Adrian entered into a Lease Agreement with MI Adrian Holdings LLC ("Adrian Landlord") for the real property and all habitable buildings having a street address of 130 Sand Creek Highway, Adrian, Michigan (the "Adrian Facility"), along with all of the equipment, fixtures, furnishings and improvements located thereon (the "Adrian Lease") in order to operate an existing skilled nursing facility.

40. Adrian last paid rent to Adrian Landlord in November of 2012.

41. The base monthly rental payment owed under the Adrian Lease is the amount of $56,998.00.

42. The aggregate amount owed by Adrian to the Adrian Landlord under the terms of the Adrian Lease as of November 30, 2016 is $2,843,919.00 (the "Adrian Arrearage").

43. On or about August 4, 2010, Hastings entered into a Lease Agreement with MI Hastings Holdings LLC ("Hastings Landlord") for the real property and all habitable buildings having a street address of 240 East North Street, Hastings, Michigan (the "Hastings Facility"), along with all of the

#39193131 v6

equipment, fixtures, furnishings and improvements located thereon (the "Hastings Lease") in order to operate an existing skilled nursing facility.

44. Hastings last paid rent to Hastings Landlord in November of 2012.

45. The base monthly rental payment owed under the Hastings Lease is the amount of $33,812.00.

46. The aggregate amount owed by Hastings to the Hastings Landlord under the terms of the Hastings Lease as of November 30, 2016 is $1,706,560.00 (the "Hastings Arrearage")

47. Section 13.2(c)(i) of the Monroe Lease, the Saginaw Lease, the Adrian Lease and the Hastings Lease (collectively, the "Leases") provides that the Monroe Landlord, the Saginaw Landlord, the Adrian Landlord and the Hastings Landlord (collectively, the "Landlords") must each give five (5) business days written notice to each of the Defendants, respectively, of a failure to pay in advance of the effective date of the Default.

48. On or about May 18, 2016, each of the Landlords sent to each of the Defendants the notice required under Section 13.2(c)(i) (the "Lease Default Notices"). A copy of each of the Lease Default Notices are attached hereto and incorporated herein as Exhibit I-1, Exhibit I-2, Exhibit I-3 and Exhibit I-4.

#39193131 v6

49. In addition, on or about May 18, 2016, pursuant to MCL §600.5714(1)(a) each of the Landlords sent each of the Defendants a Demand for Possession Non-Payment of Rent (the "Lease Demands"). A copy of the Lease Demands are attached hereto and incorporated herein as Exhibit J-1, Exhibit J-2, Exhibit J-3 and Exhibit J-4.

50. As of June 9, 2016, Monroe had not paid the Monroe Arrearage, Saginaw had not paid the Saginaw Arrearage, Adrian had not paid the Adrian Arrearage and Hastings had not paid the Hastings Arrearage.

51. On or about June 10, 2016, each of the Landlords filed a Summons and Complaint against each respective Defendant in the appropriate Circuit Court.

52. Between July 7, 2016 and July 21, 2016, the appropriate State of Michigan Circuit Court entered a Judgment against the respective Defendant, which requires each Defendant vacate its Facility (as defined below). A copy of each Judgment is attached hereto and incorporated herein as Exhibit K-1, Exhibit K-2, Exhibit K-3 and Exhibit K-4.

53. Given the inability of the Defendant to (a) pay the amount due and owing on the Note, (b) to make the monthly lease payments due and owing under the Leases, and (c) to pay the Monroe Arrearage, the Saginaw Arrearage, the Adrian Arrearage and the Hastings Arrearage (collectively, the "Lease

#39193131 v6

Arrearages"), and the Landlords ability to evict the Defendants from the various Monroe Facility, Saginaw Facility, Adrian Facility and Hastings Facility (collectively, the "Facilities"), Plaintiff is fearful of closure of one or more of the Facilities.

54. Closure of the Facilities will result in the loss of the operating license at each Facility and will dissipate the value of the Plaintiff's Collateral.

## COUNT 1:
## BREACH OF CONTRACT UNDER THE LOAN DOCUMENTS

55. Plaintiff realleges the allegations of Paragraphs 1 through 54.

56. The Loan Documents, including the Note and Security Agreement are a valid contract between the Plaintiff and Defendants.

57. Pursuant to the Note, the amounts due and owing under the Note have matured and are currently due and owing,

58. Defendants have thereby breached the Loan Documents.

59. Pursuant to Paragraph 6.3 of the Security Agreement, Plaintiff is entitled to protect and enforce its rights against the Defendants and its Collateral, including, but not limited to, the appointment of a receiver, as a matter of strict right, without notice and without regard to the adequacy of the Collateral for security of the amounts owned under the Note.

60. As of November 30, 2016, Defendants owe to the Plaintiff, the aggregate amount of $3,219,558.67, which includes, among other things, principal,

in the amount of $1,680,356.55, interest in the amount of $776,862.80, default interest in the amount of $727,393.46, late fees in the amount of $34,945.86, plus continuing per diem interest in the amount of $1,166.91, and fees and expenses incurred by the Plaintiff in enforcing the Loan Documents and all other amounts due and owing by Defendants under the Loan Documents.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment that:

A. Determines and awards to Plaintiff the amount due to the Plaintiff by Defendants pursuant to the Loan Documents;

B. Awards Plaintiff the amount of $3,219,558.67, plus per diem interest from November 30, 2016 in the amount of $1,166.91, plus attorneys' fees, and all other accrued amounts under the Loan Documents;

C. Orders and enjoins Defendants and their agents from damaging, destroying, concealing, disposing of or dissipating the value of the Property constituting the Collateral of the Plaintiff;

D. Orders Plaintiff its costs, including reasonable attorneys' fees authorized under the Loan Documents;

E. Orders the appointment of a receiver to take charge of, manage, preserve, protect and oversee the operations of the Defendants, and after the

payment of expenses of the receivership and after compensation to the receiver, to apply the net proceeds derived therefrom to the amounts owed Plaintiff; and

      F.    Grants such other relief as this Court deems equitable and just..

Respectfully submitted,

/s/ Kay Standridge Kress
Kay Standridge Kress (P39339)
Pepper Hamilton LLP
4000 Town Center, Suite 1800
Southfield, Michigan 48075
Telephone: (248) 359-7365
kressk@pepperlaw.com

Dated: December **23**, 2016    Attorneys for Plaintiff

#39193131 v6