UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MW CAPITAL FUNDING, INC.,

    Plaintiff,

v.

MAGNUM HEALTH AND REHAB
OF MONROE, LLC, *et al.,*

    Defendants.
_____/

Case No. 16-14459

HON. GEORGE CARAM STEEH

# OPINION AND ORDER GRANTING
# BENCHMARK'S MOTION FOR PAYMENT (Doc. 96)

Before the court is Benchmark Healthcare Consultants, LLC's motion to compel immediate payment of its management fee. The court considered the matter at hearings on September 12, 2018, and January 16, 2019. For the reasons explained below, Benchmark's motion is granted.

## BACKGROUND FACTS

Plaintiff MW Capital Funding, Inc., filed a complaint against several nursing homes -- Magnum Health and Rehab of Monroe, Saginaw, Adrian, and Hastings – for breach of a loan agreement. On January 4, 2017, Plaintiff obtained a consent judgment and an order appointing a receiver to operate the nursing facilities. The Receiver employed Benchmark

Healthcare Consultants, LLC, as operational manager for each facility. The Receiver and Benchmark entered into management agreements for each facility on January 9, 2017. The management agreements were for a term of one year, with an automatic renewal of an additional year, to be terminated upon a sale of the facilities.

According to the terms of the management agreements between the Receiver and Benchmark, Benchmark was entitled to a fee "equal to 5% percent [sic] of the total monthly gross revenues from the operation of the Facilit[ies]." Doc. 96, Exs. A-1 – A-4 at ¶ 3. Benchmark's fee was to be paid "to the extent there are funds available from the cash flow of the Facility to pay such Fee. To the extent that there are not sufficient funds to pay the Fee, the amount will accrue and will be paid from the proceeds of the sale of the Facility." *Id.*

The Receiver closed the Saginaw facility on May 1, 2017, because of its deteriorating financial condition, and marketed the other facilities for sale. Without a robust source of funding, the remaining facilities struggled financially as sale negotiations continued. Funds were not available from the cash flow of the facilities to pay Benchmark on a monthly basis. Accordingly, Benchmark's fee accrued in anticipation of a sale of the facilities.

On May 25, 2018, the Receiver filed a motion for an expedited sale of the receivership assets to Plaintiff through a credit bid. The matter was set for a hearing and settlement conference before Judge Friedman on June 13, 2018. At the conference, the court entered an "Order Authorizing and Approving the Expedited Sale of the Operating Receivership Assets Free and Clear of All Liens, Claims, Interests and Encumbrances" ("Sale Order"). Doc. 81. In the Sale Order, the court granted MICHA US, LLC, as assignee of the debt held by Plaintiff, "the exclusive right to acquire the Operating Receivership Assets" by credit bid. *Id.* at ¶ 1. The Sale Order provides that the closing on the sale of the Operating Receivership Assets will occur after certain regulatory approvals have been obtained. *Id.* at ¶ 6.

The Sale Order provides that MICHA "shall continue to fund the Receiver . . . during the Receivership and until the Receiver is released by the Court . . . under the terms of the Consent Order Appointing Receiver[.]" Doc. 81 at ¶ 11. The Sale Order further provides that "[a]ny valid accounts payable listed on the Receiver's most recent Statement of Account and Interim Report, including Benchmark, shall be paid in the ordinary course of business." *Id.* at ¶ 23.

Subsequent to the entry of the Sale Order, Benchmark filed a motion seeking immediate payment of its fee. Doc. 96. MICHA objected to

3

immediate payment because the sale had not yet closed and thus Benchmark's entitlement to payment had not been triggered.  MICHA also contended that Benchmark's services were so "substandard" as to constitute a breach of the management agreements.  After a hearing, the court took Benchmark's motion under advisement, pending the closing date of the sale.

The closing occurred on October 1, 2018.  The facilities are now owned by Monroe MI SNF Management LLC; Adrian MI SNF Management LLC; and Hastings MI SNF Management LLC ("the Purchaser Opcos").  Although the facilities are operated by the Purchaser Opcos, the Receiver continues to manage the Receivership Estate pending discharge.[1]

## DISCUSSION

Now that the closing has occurred, Benchmark is entitled to payment under the management agreements and the Sale Order.  MICHA continues its opposition, arguing that Benchmark provided substandard service in breach of the agreements.  Benchmark did not contract with MICHA, however, but rather with the Receiver.  Under the management agreements, the Receiver had the right to terminate the agreements after

---

[1] The Receiver has filed a motion for discharge, which the court will address in a separate order.

4

providing notice of Benchmark's default, including Benchmark's failure to "perform any material covenant, agreement, term or provision of this Agreement." Doc. 96, Ex. A-1 at ¶ 19.  The Receiver has not provided Benchmark notice or otherwise indicated that he considered Benchmark to be in default of the management agreements.  Indeed, at the hearing, the Receiver represented that he did not believe that Benchmark was in default and he did not oppose payment of Benchmark's fee.

MICHA acquired the operating Receivership assets subject to "the expenses incurred by the Receivership since the Appointment Date." Doc. 81 at ¶ 1.  Benchmark's fee is an expense incurred by the Receivership.  The Sale Order also provides that "[a]ny valid accounts payable listed on the Receiver's most recent Statement of Account Interim Report, *including Benchmark*, shall be paid in the ordinary course of business." *Id.* at ¶ 23 (emphasis added).  As MICHA acknowledges, "[w]ith respect to Benchmark, the ordinary course was dictated by the terms of its Management Agreements that provide for payment at the time of sale. . . ."  Doc. 103 at 4.  The closing date has passed and Benchmark is entitled to payment under the management agreements and the court's Sale Order.

MICHA has not presented a legal basis for it to contest Benchmark's fee under the management agreements, when it is not a party to those

5

agreements and when the Receiver, the contracting party, has no objection to Benchmark's fee or its performance.[2] The Sale Order does not provide a mechanism for MICHA to challenge the amount of Benchmark's fee, but provides that Benchmark shall be paid in the ordinary course of business. Pursuant to the Sale Order, the court finds that Benchmark is entitled to payment of its fee by MICHA without further delay. Benchmark's total fee is $1,119,167.02, broken down by facility (and as reported by the Receiver) as follows: Monroe, $412,170.74 (Doc. 124-2, PageID 3535); Adrian, $290,294.18 (Doc. 124-3, PageID 3768); Hastings, $365,499.29 (Doc. 124-4, PageID 3822); and Saginaw, $51,202.81 (Doc. 124-5, PageID 3859).

## ORDER

IT IS HEREBY ORDERED that Benchmark's motion to compel payment is GRANTED, consistent with this opinion and order.

IT IS FURTHER ORDERED that MICHA shall submit payment to Benchmark within fourteen (14) days of the date of this order.

Dated: February 12, 2019        s/George Caram Steeh
                                              GEORGE CARAM STEEH
                                              UNITED STATES DISTRICT JUDGE

---

[2] *See generally Shay v. Aldrich*, 487 Mich. 648, 663-65 (2010) (non-party must be intended and direct beneficiary to enforce contract); Doc. 96, Ex. A-1 at ¶ 27.